# In the United States Court of Federal Claims

No. 23-386
Filed: October 4, 2023
FOR PUBLICATION

**HARLEM GLOBETROTTERS INTERNATIONAL, Inc.,**

        *Plaintiff*,

**v.**

**UNITED STATES,**

        *Defendant*.

*Gujan R. Talati*, Kilpatrick Townsend & Stockton LLP, Washington, DC, *Aditya Shrivastava*, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, of counsel, for the plaintiff.

*Patrick S. Angulo*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Jennifer M. Narvaez*, Small Business Administration, of counsel, for the defendant.

## MEMORANDUM OPINION

### *HERTLING*, Judge

      The plaintiff, Harlem Globetrotters International, Inc. ("HGI"), brought this action claiming that the United States, acting through the Small Business Administration ("SBA"), wrongfully refused to disburse funds owed to HGI under the Shuttered Venue Operators Grant Program ("SVOG program").

      In December 2020, Congress created the SVOG program as part of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act. Administered by the SBA, the SVOG program made grant funds available to qualified entertainment and event businesses to offset economic hardship caused by the COVID-19 pandemic.

      The plaintiff applied for a grant under the SVOG program when applications opened in April 2021; the SBA initially denied HGI's application. After several rounds of administrative appeals and a suit filed in district court, the SBA issued HGI a Notice of Award for $10 million in December 2022. Before the end of December, however, Congress rescinded all "unobligated" funds from the SVOG program when it passed the Consolidated Appropriations Act of 2023 ("CAA"). *See* Pub. L. 117-328, § 101(d)(2). In response, the SBA notified HGI that the funds under its grant award would not be forthcoming.

The plaintiff alleges that (1) the defendant acted arbitrarily and capriciously in refusing to disburse the SVOG funds stated in the Notice of Award to HGI; and (2) the defendant's refusal to disburse those funds constitutes a breach of contract.

The defendant has moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The defendant argues that the Court of Federal Claims is without subject-matter jurisdiction to hear the complaint's first count because it effectively attempts to bring a claim under the Administrative Procedure Act ("APA"), which is not a money-mandating source of law. The defendant also argues that the complaint's second count fails to state a claim because the plaintiff has not plausibly alleged the existence of a contract.

The plaintiff's complaint fails as a matter of law to establish the plausible existence of a contract between HGI and the government. The plaintiff therefore cannot maintain a breach of contract claim. Moreover, the lack of contract prevents the plaintiff from establishing subject-matter jurisdiction over its claim that the defendant acted in an arbitrary and capricious manner. Accordingly, the defendant's motion to dismiss for failure to state a claim and for lack of subject-matter jurisdiction is granted, and the complaint is dismissed.

## I.   BACKGROUND[1]

HGI owns and operates the Harlem Globetrotters, a "live entertainment performance group that performs in over 400 events each year." (ECF 1 at 3.) Since 1926, the Globetrotters have entertained audiences with stylized basketball games that create an "immersive game-like experience, while adhering to a carefully organized script." (*Id.*) These performances came to a halt, however, in early 2020, when the COVID-19 pandemic forced the closure of most in-person recreation venues.

In December 2020, Congress passed the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act to help alleviate the adverse effects on many businesses caused by the COVID-19 pandemic. Pub. L. No. 116-260, § 301-48, 134 Stat. 1182, 1993-2052 (2020) (codified at 15 U.S.C. § 9009a). Part 324 of the Act established the SVOG program, which authorized an eligible "live venue operator or promotor, theatrical producer, or live performing arts organization operator, a relevant museum operator, a motion picture theatre operator, or a talent representative" to apply for a grant that would help offset revenue lost to COVID-19-related closures. 15 U.S.C. § 9009a(a)(1). The SBA would evaluate applications and award qualified applicants a portion of lost revenue, up to $10 million, to cover ongoing business expenses such as payroll, rent, and utilities. 15 U.S.C. § 9009a(d).

---

[1] Because the defendant has moved to dismiss under RCFC 12, the facts outlined are drawn from the complaint and are assumed to be true. Some facts in this section are drawn from the parties' briefs and are provided for additional background or context. This recitation of the background facts does not reflect any findings of fact.

The SBA began accepting applications for SVOG grants through a dedicated online portal on April 26, 2021.  (ECF 1 at 3.)  That same day, HGI applied for a grant of $10 million and submitted "substantial amounts of documentation and certifications of eligibility required by the SBA's guidance on SVOG applications."  (*Id.*)  On July 6, 2021, HGI learned via the application portal that the SBA had denied its application.  (*Id.*)  The portal notice did not include an explanation for the denial, and HGI appealed.  (*Id.*)  The SBA denied the appeal on November 2, 2021, but this time provided HGI with a high-level explanation for the denial.  (*Id.* at 4.)  HGI requested additional information, and on April 13, 2022, the SBA explained that it had denied HGI's application because HGI failed to demonstrate that its principal business activity was "either (1) sell[ing] tickets to live events by performing artists an average of not less than 60 days before the show date; or (2) creat[ing], produc[ing], perform[ing] and/or present[ing] live events by performing artists, with not less than 70% of revenue" being derived from ticket sales, merchandise and concession sales, production fees, or nonprofit educational initiatives.  (ECF 8 at 3; *see also* 15 U.S.C. 9009a(a)(3)(A).)

HGI responded to the denial of the appeal by filing suit in the United States District Court for the District of Columbia.  *Harlem Globetrotters, Inc. v. U.S. Small Bus. Admin.*, 1:22-cv-01679 (D.D.C., Mar. 13, 2022).  HGI sought an order requiring the SBA to award it a $10 million grant under the SVOG program.  In response to the suit, the SBA reconsidered its denial of HGI's application, determined that HGI did qualify for a grant, and issued a Notice of Award to HGI on December 1, 2022.  (ECF 1 at 4.)  HGI subsequently voluntarily dismissed its district court complaint without prejudice.

The Notice of Award specified several "'action items' that would need to be completed [by HGI] before disbursement" of the award; among these items were signing and returning the Notice of Award to the SBA.  (*Id.*)  HGI completed the action items and returned the Notice of Award to the SBA on December 7, 2022.  (*Id.*)  On December 27, 2022, an SBA representative left HGI a voicemail stating that the agency was "'getting things together to get these disbursements out' and that 'as far as [the representative] knows there are not any issues.'"  (ECF 1 at 5; *see also* ECF 7 at 4.)

Two days after the voicemail from the SBA official, Congress passed the CAA, which the President signed.  Pub. L. 117-328, 136 Stat. 4459.  Section 101(d)(2) of the CAA rescinded $459 million of the SVOG program's "unobligated" funds.  On February 9, 2023, the SBA informed HGI that it could not disburse the funds as stated in the Notice of Award.  (ECF 1 at 5.)

## II.     PROCEDURAL HISTORY

HGI filed its complaint on March 20, 2023.  (ECF 1.)  The complaint alleges that (1) "the government's refusal to distribute funds to HGI is arbitrary, capricious, an abuse of discretion and/or otherwise contrary to law," and (2) the "government's refusal to distribute funds pursuant to the Notice of Award is an implied-in-fact breach of contract."  (ECF 1 at 6-7.)  The defendant filed a motion to dismiss the complaint for lack of subject-matter jurisdiction as to Count I and for failure to state a claim as to Count II.  (ECF 7.)  HGI filed a response, and the defendant replied.  (ECF 8, ECF 9.)  Oral argument was held on September 19, 2023.

### III.     JURISDICTION AND STANDARDS OF REVIEW

The Tucker Act, 28 U.S.C. § 1491(a), vests in the Court of Federal Claims jurisdiction over claims for money damages against the United States:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act itself does not "create[ ] a substantive right enforceable against the Government by a claim for money damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). Instead, the Tucker Act limits the jurisdiction of the Court of Federal Claims to causes of action based on money-mandating statutes and regulations separate from the Tucker Act. *Metz v. United States*, 466 F.3d 991, 995-98 (Fed. Cir. 2006).

#### A.     Rule 12(b)(1)

The defendant has moved to dismiss Count I of the plaintiff's complaint, that the SBA's refusal to distribute the awarded SVOG funds was arbitrary and capricious, on the grounds that this court lacks subject-matter jurisdiction over the claim. Under RCFC 12(b)(1), a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). When a plaintiff's asserted jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)). Accordingly, in resolving the defendant's motion to dismiss, evidence provided by either party relevant to the jurisdictional issues raised by the motion to dismiss may be considered.

A plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc*, 659 F.3d at 1163. If a court finds that it lacks subject-matter jurisdiction over the plaintiff's claim, RCFC 12(h)(3) requires dismissal of the claim.

#### B.     Rule 12(b)(6)

The defendant has moved to dismiss Count II of the plaintiff's complaint, that the government breached a contract, for failure to state a claim under RCFC 12(b)(6). Dismissal for failure to state a claim upon which relief can be granted "is appropriate when the facts asserted by the claimant do not entitle [the claimant] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). A court must both accept as true a complaint's well-pleaded

factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiffs are entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## IV.  DISCUSSION

The complaint alleges two causes of action: first, that the SBA's "refusal to distribute funds to HGI is arbitrary, capricious, an abuse of discretion and/or otherwise contrary to law," and second, that the SBA's "refusal to distribute funds pursuant to the Notice of Award is an implied-in-fact breach of contract." (ECF 1 at 6-7.) The defendant has moved to dismiss Count I for lack of subject-matter jurisdiction and Count II for failure to state a claim upon which relief can be granted. (ECF 7.) Because the plaintiff ties jurisdiction over Count I to the existence of the contract alleged in Count II,[2] the contract claim of Count II will be considered first.

### A.  Count II: Breach of Contract

In moving to dismiss Count II of the complaint, the defendant argues that the complaint does "not plausibly allege the existence of a contract." (ECF 7 at 12.)

The existence of a contract is a question of law. *Cal. Fed. Bank v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001). A complaint must "allege facts establishing the existence of a contract with the government." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381 (Fed. Cir. 2019). To establish the existence of a contract with the federal government, the plaintiff must allege facts sufficient to demonstrate: (1) a mutual intent of the parties to contract; (2) an unambiguous offer and acceptance; (3) consideration; and (4) "actual authority" by the government representative "to bind the [g]overnment" in contract. *Id.*; *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003).

These four requirements for alleging and establishing the existence of a contract apply equally to a claim alleging the existence of an implied-in-fact contract. *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005); *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003). In an implied-in-fact contract, a "meeting of minds . . . 'is inferred, as a fact, from the conduct of the parties . . .'" and the surrounding circumstances. *Hanlin*, 316 F.3d at 1328 (quoting *Balt. & Ohio R.R. v. U.S.*, 261 U.S. 592, 597 (1923)).

---

[2] The plaintiff argues that the "SBA arbitrarily and capriciously administered its obligations to HGI," resulting in a breach of contract. (ECF 8 at 11.) The plaintiff argues that its breach of contract claim entitles it to monetary relief, which gives the Court of Federal Claims jurisdiction to decide whether the SBA acted in an arbitrary and capricious manner. (*Id.*)

To defeat the defendant's motion to dismiss, HGI must plausibly allege the existence of a contract. The defendant challenges the existence of all the elements of contract formation, except for consideration.

The SVOG program provides grants to qualified applicants. As the Federal Circuit has recognized, "[t]he government may implement statutorily mandated subsidy programs without employing contracts as a vehicle for doing so." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021). Nonetheless, a grant award by a federal agency can be sufficient to establish a contract between the agency making the award and the recipient of the grant "when the standard conditions for a contract are satisfied." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021). Without more, the mere fact that the SBA was making a monetary grant to SVOG recipients is not itself sufficient to prove or disprove the existence of a contract between the SBA and HGI. Instead, HGI must plausibly plead facts showing the elements required to form a contract are satisfied to demonstrate the plausible existence of a contract and to defeat the motion to dismiss.

HGI's is not the first case brought before the court addressing the SVOG program. *See Imaginarium, LLC v. United States*, 166 Fed. Cl. 234 (2023). In *Imaginarium*, the plaintiff, a production company and venue operator, applied for an SVOG grant. 166 Fed. Cl. at 239. The SBA approved the grant application, sent Imaginarium a Notice of Award, and included it on a published list of SVOG grant recipients. *Id.* Two weeks later, the SBA sent Imaginarium a duplicative Notice of Award but, within eight minutes of sending that second Notice of Award, sent another message requiring Imaginarium to provide additional information before its eligibility for the award could be confirmed. *Id.* Despite requesting a clarification from the SBA, Imaginarium received neither the SVOG funds nor a formal rejection of its application, and it sued for breach of contract. *Id.* Imaginarium sued in district court alleging a breach of contract and other claims; the breach of contract claim was transferred to this court, and the defendant moved to dismiss.

On these facts, Judge Roumel determined that Imaginarium's complaint did not establish an intent by the SBA to contract with the plaintiff. *Id.* at 245. She granted the defendant's motion to dismiss under RCFC 12(b)(6), holding that the complaint "d[id] not –and c[ould] not – plausibly satisfy" the requirement to show the intent by the government to establish a contract. *Id.* First, Judge Roumel carefully reviewed the statute, 15 U.S.C. § 9009a, and the SBA's SVOG guidance to determine whether they reflected an intent by the government to contract. She held that neither the statute nor the SBA's guidance could support such an intent. *Id*. at 243. She went on to consider whether the SBA's "direct communications" with Imaginarium could demonstrate an intent by the defendant to contract and found they could not. *Id*. at 244.

After disposing of Imaginarium's arguments that the SVOG statute and the SBA's guidance reflected an intent to contract, Judge Roumel tackled its "primary argument," which was that "the SVOG Program and the SBA imposed rules on applicants – such as eligibility requirements, spending limitations, and recordkeeping procedures – and those rules indicate the SBA's intent to contract." *Id*. Judge Roumel rejected Imaginarium's argument, holding that "the mere fact that SVOG grantees must comply with certain requirements as a condition of a grant does not mean that the United States has somehow manifested its intent to contract." *Id*.

Imaginarium could not plausibly plead that the SBA had the requisite intent to contract when it sent the erroneous grant notices to the plaintiff, and the lack of intent to contract prevented the plaintiff from being able to establish the "existence of a contract with the United States as a matter of law." The complaint was therefore dismissed under RCFC 12(b)(6). *Id.* at 245-46.

To try to sidestep the well-reasoned outcome in *Imaginarium*, HGI seeks to distinguish its claim from that in the earlier case. Unlike the plaintiff in *Imaginarium*, HGI disclaims reliance on the argument that the law creating the SVOG program reflects an intent on the part of the defendant to bind the SBA in contract when it issues a Notice of Award. (ECF 8 at 10 n.2; 17.) HGI also does not allege or argue that the SBA's SVOG guidance can support the existence of a contract. Instead of these statutory and regulatory bases on which Imaginarium attempted, in part, to base the existence of a contract, HGI relies entirely on the factual distinctions between its situation and that in *Imaginarium*.

HGI argues that, in the earlier case, the SBA had implicitly rescinded the award to the plaintiff; here the plaintiff alleges that the SBA did not rescind the award. Indeed, the SBA reaffirmed the award orally just days before Congress adopted the CAA, rescinding unobligated SVOG funds.

The distinction between the implicit rescission of the award in *Imaginarium* and the lack of any such rescission of HGI's award, the plaintiff contends, is crucial because the rescission of "unobligated" funds by the CAA is "central" to HGI's case. (*Id.* at 8.) In combination with "different individuals, different communications, and different terms in HGI's Notice of Award," the plaintiff contends that the facts alleged by HGI reflect a mutual intent to contract that should "at the very least" afford the plaintiff an opportunity to overcome the motion to dismiss and take discovery. (*Id.* at 8-9.)

The law applicable to HGI's claim is the same as the law that governed Imaginarium's claim: the complaint must plausibly allege that a government agent with actual authority to bind the government intended to enter a contract with HGI, and that there was an unambiguous offer and acceptance supported by consideration. Without each of these elements, the complaint cannot survive a motion to dismiss. The defendant challenges the existence of three of the four required elements, all but the existence of consideration.

The facts underlying HGI's complaint May be distinct from those in *Imaginarium*, but the question is whether these factual distinctions make a legal difference. They do not. The plaintiff has not plausibly alleged that the SBA intended to bind the government in contract. The plaintiff loses at this initial step, and no further analysis of the remaining factors relevant to the existence of a contract needs to be undertaken.

HGI proposes to identify the defendant's intent to contract in the SBA's Notice of Award, the course of conduct surrounding the application process, HGI's acceptance of the terms of the Notice of Award, and the SBA's oral confirmation of the award.

The plaintiff argues that the Notice of Award constituted an "offer" by the defendant.[3] (ECF 8 at 21.) When the plaintiff returned to the SBA a signed copy of the Notice of Award and its appendix, the plaintiff accepted that offer. Under the plaintiff's argument, a contract was formed. The plaintiff accurately summarizes the course of events, but its conclusion depends on the Notice of Award being an offer by the SBA to contract. That is the same question the court in *Imaginarium* addressed, holding that a Notice of Award issued under the SVOG program does not establish a governmental intent to contract. Although *Imaginarium* is not binding in this case, the Federal Circuit precedents Judge Roumel relied on in *Imaginarium* to reach her decision are binding.

To establish that the government intended to bind itself in contract, a plaintiff must provide "something more than a cloud of evidence that could be consistent with a contract." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003), *rehearing en banc denied*. Evidence of an agency simply "perform[ing] its regulatory or sovereign functions does not create contractual obligations." *Id.* at 1378-79 (finding insufficient evidence of intent to contract when a plaintiff "simply submitted an application, . . . and the [government] accepted it"). The facts alleged must reflect "a clear indication of intent to contract." *Id*. at 1378.

Specific to the SVOG Notice of Award, HGI fails to explain how and why a routine document evincing approval of the plaintiff's application for a grant reflects the SBA's intent to contract. As in *Imaginarium*, the Notice of Award to HGI appears to be a standard SBA form informing recipients of a grant award; the form does not appear to be specific to the SVOG program. The document explains that its purpose is "to notify grant recipients of award reporting and record keeping requirements. Grantees are required to review and sign the form and return [it] to SBA . . . ." (ECF 7-2.) The form provides relevant information about the amount of the award, the project and budget periods, and information related to HGI. The Notice of Award does not spell out mutual obligations on the SBA's part. The form also lacks a signature by any SBA official.

Nothing in the Notice of Award suggests it is part of a contract. The Notice of Award does not purport to undertake any reciprocal commitments by the SBA. The document's purpose is reflected in its title; it is simply a notice, nothing more.

The SBA's use of a generic grant-award notification form and not one specific to the SVOG program reflects that the information included on the Notice of Award "would be included in any grant document and does not necessarily indicate an intent to contract."

---

[3] The lack of clarity in the plaintiff's conception of its own case is reflected by its shifting position. In its complaint, HGI alleges that its application for an SVOG grant was the offer, and the Notice of Award reflected the SBA's acceptance of that offer. At oral argument, the plaintiff clarified its position and argued that the Notice of Award was the offer, and HGI's signed return of the Notice of Award and its addendum constituted its acceptance of the SBA's offer. Because the defendant had no intent to be bound by contract in the SVOG program, the precise contours of the offer and acceptance need not be resolved.

*Imaginarium,* 166 Fed. Cl. at 244. Under *D & N Bank*, more is required before the law will find that the existence of a contract has been plausibly alleged. The SBA's mere execution of its regulatory function—to process and, when the statutory and regulatory requirements are satisfied, accept applications—is insufficient to establish a plausible intent by the SBA to contract with HGI or any SVOG grant awardees. *Cf. Am. Bankers Ass'n*, 932 F.3d at 1384 (concluding an agency's acknowledgement that "application and payment have been processed" was insufficient to show a contract but rather reflected a "statement of policy based on [the statute] . . . not the language of a promise or contractual undertaking").

Beyond the Notice of Award, the plaintiff argues that the government's intent to be bound in contract can be inferred through its conduct and "other documentary evidence." (ECF 8 at 18.) As to the alleged course of conduct, however, none of the SBA's actions, individually or together, is inconsistent with the agency's role as administrator of a grant program. The SBA, consistent with the authorization of the SVOG program by Congress, created an application process. HGI applied for a grant. The SBA eventually notified HGI that its grant application had been approved and required HGI to acknowledge its acceptance of the grant and its willingness to comply with the terms and obligations of the grant; HGI did so. That same process is mirrored in multiple grant programs across many federal agencies, but these elements do not by themselves convert these programs into contractual arrangements. *See Thermalon Industries v. United States*, 34 Fed. Cl. 411, 421 (1995) ("[T]he government always has the choice when designing a grant scheme to select a scheme that does or does not involve contracts."). The actions the SBA took in issuing the Notice of Award and requiring HGI to indicate its acceptance of the terms of the grant are those any agency would take in awarding a grant and do not evince any clear intent to enter a contractual relationship.

In addition to the course of conduct, the plaintiff relies on three acts by the parties as evidence of an intent to be bound in contract: the SBA's issuance of the Notice of Award, the execution by HGI of the Notice of Award and addendum, and a telephonic notification from the SBA that "all 'action-items' were complete." (*Id.* at 18-19).

Circumstantial and documentary evidence may be used to support an intent to contract by an agency. *See, e.g.*, *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005) ("abundant documentary proof" may establish mutual intent to contract); *Peninsula Grp. Cap. Corp. v. United States*, 93 Fed. Cl. 720, 728 (2010) (mutual intent may be inferred from the conduct of the parties). The Federal Circuit has found that agency correspondence and memoranda may reflect the type of proof necessary to support finding an intent to contract. *Hometown Fin.*, 409 F.3d at 1365; *Cal. Fed. Bank*, 245 F.3d at 1347.

On the other hand, statutes without "words of a promissory character" that would "manifest[ ] an undertaking or commitment rather than a mere instruction" do not establish an intent to contract. *Hanlin*, 316 F.3d at 1329. Moreover, the degree of control an agency has over the interaction with the awardee is insufficient to "evidence [the agency's] intent to enter a contract." *Calapristi v. United States*, 156 Fed. Cl. 13, 19 (2021). Control by an agency is a "natural part" of the agency's role in administering a government program. *Id.* Regulations, directives, and the like with the stated purpose of establishing "policies, procedures,

responsibilities, and authorities" for an agency-funded program are likewise insufficient to establish an intent to contract. *Id.* at 20.

The plaintiff first relies on the SBA's "disbursement of a Notice of Award." (ECF 8 at 8.) As previously explained, the Notice of Award itself is insufficient to show an intent to contract. The plaintiff appears to suggest that the *act* of issuing the Notice of Award reflects a course of conduct separate from the contents of the Notice of Award itself. Under this logic, such an interpretation would constitute "conduct" of the defendant through which to infer intent to contract. The act of issuing the Notice of Award cannot indicate an intent to contract when the Notice of Award itself does not reflect such an intent. It is impossible to separate the issuance of a Notice of Award from the content of Notice of Award itself; they are two sides to the same coin.

The plaintiff next relies on its signed return of the Notice of Award, which indicated HGI's acceptance of the terms of the award and acknowledged its commitment to satisfy various obligations associated with the grant. HGI's return of the signed Notice of Award and initialed acknowledgement of its requirements fails to indicate a mutual intent to contract for the same reason that issuing the Notice of Award does not suffice. The "execution" of the Notice of Award cannot constitute conduct indicating an intent to contract when the Notice of Award does not itself point to the existence of a contract.

Finally, the plaintiff offers as evidence of the SBA's intent to contract the notification to HGI that "all 'action items' were complete" and a voicemail from an SBA representative "confirming that no outstanding issues remained" on HGI's application. (ECF 8 at 19.) Both parties agree that this communication took place, but the plaintiff has not offered any explanation as to how these statements reflect the SBA's intent to contract, rather than simply providing updates as to the status of a regulatory grant application. (*See id.*; ECF 7 at 4.) Even if the statements could support an inference that the SBA intended to contract with HGI, they are not so conclusive as to establish such intent on their own, especially when the Notice of Award that underlies the entire course of the parties' supposed mutual obligations does not reflect an intent to contract by the SBA.

The Federal Circuit has held that "oral assurances do not produce a contract implied-in-fact until all steps have been taken that the agency procedure requires; until then, there is no intent to be bound." *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1080 (Fed. Cir. 1989). Though the voicemail provided HGI with a promising update on the status of its application, it carries no weight in establishing the SBA's intent to contract unless all the other steps necessary under the SBA's procedures to contract were established. Because the Notice of Award did not reflect an intent to contract, any voicemail informing HGI that its grant was forthcoming is irrelevant to alleging a plausible intent to contract.

Federal Circuit precedent requires more supporting evidence before the inference could be drawn that these communications from the SBA show an intent to contract by the SBA. *See, e.g.*, *Hometown Fin., Inc.*, 409 F.3d at 1365 (finding that correspondence, memoranda, forbearance letters, and regulatory maintenance and dividend agreements, taken together, supported a government intent to include long-term goodwill as a contractual requirement);

*D & N Bank*, 331 F.3d at 1378 (finding that four documents—two conditional approvals of a merger, an internal agency memorandum, and a letter satisfying one of several conditions of approval—which did not individually reflect an intent to contract did not establish an intent to contract when considered in combination).

The plaintiff offers no evidence of other memoranda or correspondence between it and the SBA that might be sufficient to allege intent. Therefore, the evidence cited by the plaintiff is functionally no different than the evidence found in *Imaginarium* to be insufficient to allege plausibly that the SBA intended to contract.

HGI argues that even if the complaint has not yet shown the SBA's intent to contract, it should be allowed an opportunity to take discovery to develop the factual record necessary to establish this intent. (ECF 8 at 26-27.) Relying again on the issuance of the Notice of Award, HGI's response to the Notice of Award, and the follow-up communications from the SBA, HGI argues that dismissal is premature because HGI should have the opportunity to introduce these items into evidence. (*Id.*)

At oral argument, the plaintiff explained that discovery would allow it to obtain SBA documents produced in connection with HGI's grant application between the December 2022 acceptance and February 2023 rescission. It would also seek records on similarly situated SVOG applicants as a point of comparison between the SBA's treatment of HGI and other awardees. None of these items, if they exist, is material to the question of whether the SBA had any intent to contract with HGI when it made its grant award. At best, such materials might show an intent to contract with other entities, but the SBA's interactions with other applicants are not relevant to the SBA's intent to contract with HGI.

To survive a motion to dismiss, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The misconduct alleged here is a breach of contract by the SBA. The complaint does not plausibly plead the existence of a contract because on the face of complaint and the documents integral to the complaint the plaintiff cannot plausibly show an intent to contract by the SBA. Accordingly, Count II is dismissed pursuant to RCFC 12(b)(6) for failure to state a claim.

### B. Count I: Arbitrary and Capricious Refusal to Disburse Funds

The defendant argues that Count I of the complaint is "plainly a claim alleging an APA violation" beyond the jurisdiction of the Court of Federal Claims. (ECF 7 at 8.) During oral argument, HGI effectively conceded that its claim under Count I of the complaint was dependent on the existence of a contract.

The APA is not a money-mandating statute. The Court of Federal Claims has no jurisdiction under the Tucker Act over APA claims. *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003). As the Federal Circuit has explained, "the APA does not authorize an award of money damages at all; to the contrary, section 10(a) of the APA, 5 U.S.C. § 702,

specifically limits the [APA] to actions seeking relief other than money damages." *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) (internal quotation omitted).

The plaintiff argues that subject-matter jurisdiction over Count I of its complaint exists because this court has jurisdiction over claims that the SBA breached a contract by acting arbitrarily and capriciously. (ECF 8 at 9.) The plaintiff contends it "is not pursuing an APA case" at all. (*Id.*) Instead, it links Count I of the complaint to the breach of contract alleged in Count II. The plaintiff explains that its complaint "uses the language 'arbitrary and capricious' as a descriptive means of stating SBA can provide no reasonable explanation for its breach of contract." (*Id.* at 12.) Importantly, the plaintiff "does not assert that § 9009a is a money-mandating statute" (ECF 8 at 25); the plaintiff relies solely on the existence of a contract as the source of its substantive right to money damages. Without a contract or another money-mandating source of law, Count I of the plaintiff's complaint alleges only that the SBA's failure to disburse the SVOG grant to HGI in accordance with the Notice of Award was arbitrary and capricious. The complaint's only claim for entitlement to money damages stems from the alleged breach of contract.

Because Count I is dependent on and duplicative of Count II, it fails to state a claim because the complaint fails to allege the plausible existence of a contract. To the extent Count I effectively claims that the SBA acted in an arbitrary and capricious manner by considering the funds awarded to HGI in the Notice of Award as "unobligated" when the CAA was enacted, the claim is best seen as being brought under the APA and is therefore beyond the jurisdiction of the Court of Federal Claims. Such a claim would be within the jurisdiction of the district courts, as would a claim against the defendant for promissory estoppel (assuming HGI can plead the elements of such a claim). In either case, Count I must be dismissed.

## V.    CONCLUSION

The plaintiff has not plausibly alleged the existence of a contract with the government. Therefore, the plaintiff has failed to state a claim on which relief can be granted on its breach of contract claim. Because the plaintiff's claim that the defendant's breach of the contract was arbitrary and capricious does not, without a contract, arise under a money-mandating source of law, it falls beyond the jurisdiction of the Court of Federal Claims. The defendant's motion to dismiss the complaint under RCFC 12(b)(1) and 12(b)(6) is granted. A separate order directing the entry of judgment shall be issued.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**